Thank you, Your Honors. May it please the Court, my name is Shannon Lis Reardon and I represent the plaintiffs. I would like to reserve four minutes of my time for rebuttal, if I may. You may. Watch your clock. Okay. All right. Thank you. So, Your Honors, this case raises extremely important issues under Massachusetts and federal law. Although the use of arbitration clauses have become widespread over the past decade, no appellate court has yet addressed the stark situation that is before you today, where a company is attempting to use its arbitration clause to prevent an injunction, which is necessary to and supportive of the public interest as well as workers. In the case of a global pandemic, Uber is trying to avoid an order that it has to provide its drivers with paid sick leave, which they would be required to obtain if they were properly classified as employees under Massachusetts law. And Uber is saying you can't even address this court because of an arbitration agreement, which would not allow the drivers to seek the remedy of ensuring that drivers receive paid sick leave, which is a danger to the public and is exacerbating our global pandemic. So as set forth in our papers, there are a number of reasons why the court, first of all, should have addressed the injunction request before even getting to arbitration, as the prior district court in the case Judge Talwani did based on plaintiffs earlier motion for injunctive relief. Secondly, what the plaintiffs seek here is in the nature of public injunctive relief. And the Massachusetts attorney general's office has now agreed with plaintiffs through the unusual step of submitting an amicus brief, even at the district court level, that Massachusetts law would, like California law, provide for public injunctive relief, which this court recognized in Blair can't be stopped through an arbitration clause that is not preempted by the Federal Arbitration Act. And in addition to that, we have the argument that Uber drivers are exempt from the Federal Arbitration Act under the transportation order exemption. And this court's decision in Whitman is directly on point in controlling, in which this court has now determined it's not necessary for workers to themselves cross state lines in order to take advantage of the transportation work or exemption. Here, drivers do at times cross state lines. Uber says it's about two and a half percent of the time. And in Conestra, the Seventh Circuit said that crossing state lines even 2% of the time was enough to be engaged in interstate commerce. And beyond that, Uber even admits that about 10% of the rides are to and from airports, and an even greater amount will be to bus stations and train stations. So this is not a marginal amount. And unlike cases that have been argued about by Uber or cited by the district court below here, Uber actually has relationships with the airlines in which it makes deals with the airlines to both advertise its services and even sell its transportation services for first leg and last leg of passengers' transportation, which distinguishes this case from the yellow cab case. Now, the district court below relied on yellow cab in reaching the same conclusion that Judge Chabria did in the Rogers v. Lyft case. But there are important distinctions here. In that case, local taxi drivers who couldn't even go outside the city limits were held not to be engaged in interstate commerce. Here, there are no such limits. And there, the court actually pointed out that there was no cooperation between the taxi companies and the railroads. Whereas here, there is cooperation. Uber and Lyft drivers account for 40% of the traffic at Logan Airport, and they're actually regulated. This is part of the passenger's interstate journey. And this court in the recent Grice case has adopted the passenger. There had been before the question about whether transportation of passengers could fall under the transportation worker exemption. And here, that issue was no longer an issue in the Ninth Circuit. Both Rittman, which adopted the WICAFA v. Amazon decision, recognized that transport of passengers could bring workers from the transportation exemption. And the court in Grice recognized that as well. But the problem with Grice— Is this interstate commerce question a question of fact? So, that's an interesting question, Your Honor. There are some courts that have held that it needs factual development, such as the same court in the Third Circuit remanded the case for discovery, although it's still not completely clear what standard would apply there. Here, I really don't—I think if the issue was going to be how much is there transportation to or from airports, that could be a factual development. But I don't really think that's going to be a dispute among the parties. Uber itself said that about 10 percent of its rides in Massachusetts are to or from an airport. And I think it's also apparent that there is cooperation now between Uber, even from its own statements, and Airline for that whole trip. It's not—this isn't like the food delivery cases where courts have held that food is not in interstate commerce because the trips were broken when the food reaches a restaurant. Here, clearly, when a passenger gets off an airplane at Logan Airport, they're not done with their journey. They're not done with their journey until they get to their home or their hotel room. And so being transported by an Uber driver is part of that trip. So I think this is really more a conceptual issue. And also, importantly, as we noted in our papers, the Yellow Cab case was decided decades after the FAA was passed. Rittman, this court in Rittman, like the first circuit in Wyethawka, correctly looked to the cases that had been decided before the FAA was passed, the cases under FEWA, cases like Hancock and Birch. And also, the Yellow Cab— Maybe we could get to some of the kind of specific issues here. Sure. How about whether or not the preliminary injunction was entered at the wrong time? Okay, yes. Thank you, Your Honor. So this court, under TOIA tires, the district court should have considered the preliminary injunction request even before getting to the arbitration issue. This isn't a case in which the plaintiffs could have obtained the injunction in arbitration. So it's not just that the court proceedings would be necessary only to preserve the status quo for arbitration, and then the arbitrator can then decide whether to enter the injunction. Here, Uber is trying to get out of ever having anyone, a court or an arbitrator, ever be able to decide whether an injunction is warranted here. And the U.S. Supreme Court nor the Ninth Circuit have ever allowed such a thing to happen. If I could just jump into— Well, what status quo, Andy, would you be preserving? Well, okay, I misspoke when I just said status quo, because the case law does not require an injunction be limited to the status quo. I think we mentioned in our papers cases that have noted that enjoining a company from violating the law is a proper use of an injunction. I mean, the People v. Uber case shows that where a superior court in California recently entered such an injunction, as did the court in the People v. Maple Bear case as well. Notwithstanding the fact that Uber moved—or in the Instacart case, the Maple Bear case, Uber had already moved to compel arbitration. I'm sorry, not Uber. The dependent there, Instacart, had moved to compel arbitration, and the court set it to decide until after it decided the preliminary injunction. And the same token in the People v. Uber case, Uber had said that it planned to use its arbitration clause to stop the court from deciding the restitution issue, and the superior court nevertheless said that it needed to decide the injunction, as this court should as well. Counsel, before you run out of time altogether, let me ask you this. It's not entirely clear to me that the public injunctive relief question is not entirely clear, just because Uber is a very atypical employer that provides this app service or app platform. Of course, I recognize that there'll be a delay because of the pandemic situation, but what's your view on certifying this question to the Massachusetts Supreme Court? Well, I think this is an extremely important case that should be certified in the Massachusetts Supreme Judicial Court, and it could do so in an expedited fashion, because this is something that needs to be decided quickly. McGill and its predecessor cases, it was not clear under California law that this public injunction exception existed until it reached the California Supreme Court, so we don't know until this question goes to the Massachusetts Supreme Judicial Court if Massachusetts law would hold that same. And in McGill, the issue was deceptive. Counsel, relatedly, assume that the Massachusetts High Court decides that there is this public injunction component that precludes arbitration. Is what you're seeking here public injunctive relief? Yes. Well, I can see how the health concerns, you know, getting an injunction with respect to sick leave only in the light of COVID would be in the nature of public injunctive relief, but what about the overtime and minimum wage protections and other things that fall from being classified as employees? Well, I mean, I recognize that those aren't quite the same, and I recognize that the Clifford case held that an overtime claim wasn't public injunctive relief. I believe that the sick time, sick pay claim is much more starkly an issue of public injunctive relief because it affects the public clearly as well as the drivers. In our prior injunction that was filed, that's pending at the First Circuit, the argument that plaintiffs made was that the totality of the labor protections, the wage protections that were being denied based on the misclassification scheme impacts the public as well as the drivers because of the burdens on taxpayers and public assistance. It puts burdens on the state as well as on the public. Uber, by the way, has argued that that issue was not properly before the First Circuit. It should all be tied up in this appeal. So we've stated that this court can look both at the at the sick pay issue as well as the totality of labor protections that are denied, which the Mass. Attorney General agrees goes to is in the nature of a public public relief as well as urgently needed relief by the drivers. And I do want to reserve some time. So unless your honors have more questions for me, I'd like to reserve my remaining time. Thank you, counsel. Thank you. Thank you. And please. DNA evangelists on behalf of Uber technology. The court should affirm the district court's well-reasoned decision, compelling arbitration and denying the mandatory preliminary injunction sought by plaintiffs here. This court, the Seventh Circuit and an unbroken line of district court decisions in this circuit have all rejected plaintiffs argument regarding section one of the FAA and two judges, Judge Chen and Judge Tawani correctly rejected plaintiffs request for preliminary injunction. Court should affirm for several reasons, and I will list them and then go into each one. First, the district court correctly held that this dispute belongs in arbitration as numerous courts, including this one have repeatedly enforced Uber's arbitration agreement. This court in the O'Connor case and the Mohammed case. Also, this court in Grice just last month and also in Rittman explained that drivers who use apps like Uber's are not exempt under section one of the FAA and district courts in the circuit unanimously agree with Judge Chen on this issue. Second, the district court correctly rejected plaintiffs claim that they cannot be compelled to arbitrate because they seek a so-called public injunction. No court has ever held that reclassification and wage and hour claims are public injunctive relief. So that's just not a public injunction and courts in California unanimously reject that notion. Finally, the district court was correct to deny plaintiffs motion for preliminary injunction pending arbitration because the mandatory injunction that they thought would upend rather than preserve the status quo and it would not preserve the meaningfulness of the arbitration process. So first I'll address the FAA. The district court correctly found that plaintiffs failed to meet their burden. It was their burden to show that they're exempt and courts again in the ninth circuit are unanimous that section one doesn't apply here. And as the court said in Grice just last month, the plaintiff's reading of section one would quote allow the exception to swallow the rule and that's exactly right. It would also create a circuit split. If this court were to agree with plaintiffs, it would also create an intra-circuit conflict with Grice and it would upend those decisions of every district court in the circuit. So first, the parties are in agreement. There's no dispute and the court explained in Grice that the relevant class of workers here is ride share drivers nationally. Those drivers are not engaged in interstate commerce within the meaning of section one. As Rittman held, a class of workers can be engaged in interstate commerce if their job is to move things across state lines or if their work is part of an integrated chain of interstate commerce that's coordinated by the company. It expressly distinguished gig economy workers and here the evidence is undisputed that the class of workers is not in the business of crossing state lines as Judge Chen found based on the undisputed record evidence only two and a half percent of trips ever cross state lines and that is a factual finding and it was undisputed. And also, the evidence is undisputed that there's nothing to support at all a finding that drivers are completing the last leg of an interstate trip coordinated by Uber and that's a very important fact. That's what this court explained in Rittman and also in Grice. In order for an intrastate trip to fall within the section one exemption, it has to be part of an integrated chain of interstate transportation coordinated by Uber. I have a question on that. Does Uber continue to partner with airlines or airports? There's no evidence in the record, Your Honor, as to that. That's not, I'm not sure where Plaintiff's counsel was getting that, but there was no evidence in the record as to that and it's just not true. And here, as Judge Chen found, only 10% of trips at most originated at or dropped people off at an airport and that is a factual finding. So there is no partnership? I thought we saw evidence in the record that there was a partnership. There wasn't evidence in the record, I think Plaintiff's... Is there a way for companies like Uber to simplify end-to-end travel experience? I'm sorry, Your Honor. There's no evidence in the record, but Plaintiff's cited some links and some materials, I think in a footnote of their brief. But the evidence in the record shows that at best that's 10%. So again, that's not the class of workers. If 10% of a class drives a red car, of course we can't say that the entire class of workers... I'm just trying to probe you a little bit, because there are, they might have said in their briefs that I have in front of me, various statements that there are airways partners with Uber. Is that not true? Your Honor, I don't believe that that's true and I don't think that there's evidence in the record as to that, but I do... I'm asking you if it's true. What about Uber and American Airlines now offer free $20? No, Your Honor. I think for purposes of the Section 1 analysis, I'd like to go back to, as a legal matter, Uber has to be coordinating the trip. I'm sorry. I don't even want to go somewhere else. I'm just trying to understand whether these are real partnerships. If there were real partnerships, I think the nature of the arrangement might be important to know about. Yes, Your Honor. The type of partnerships that have mattered is a legal matter. Going back to the yellow cab case, it is where the intrastate trip is part of a coordinated chain. So if, for example, Uber had an arrangement whereby Uber was responsible for the interstate travel. If Uber was coordinating it, where, and again, airport trips, we don't know that they're interstate trips. In California, for example, we go from San Francisco to L.A. all the time. People go to the airport just to work or do something else. But just going back to the coordinated chain of interstate commerce, there's nothing here like in the yellow cab case. And this court in Grice was very clear that the type of trips that the Supreme Court said were in interstate commerce in the yellow cab case were those that were purchased in advance as part of that interstate travel. And there's nothing like that here. So that's an important distinguishing factor. And this court already addressed that in Grice. And those articles, I think what plaintiffs have cited are some unauthenticated news articles that are several years old. And there's just no evidence in the record. And Judge Chen made those findings about the nature of the work here. What about counsel, the question of whether public injunctive relief is available, given the uniqueness of the business model in this case where any member of the public really could become an Uber driver. You've got to have a clean record and a working car and all that. But the bigger the group of drivers who sign on to the app, the better it is for Uber's business model. If there's a public injunction, wouldn't that benefit the members of the general public in a way that's different than the typical wage in our case? No, Your Honor. In fact, no court has agreed with plaintiffs' argument on that point. This is a private injunction. And the California Supreme Court in McGill, I think, said it best. They said that where the relief has the primary purpose or effect of redressing or preventing injury to an individual plaintiff or to a group of individuals similarly situated to plaintiffs, that could be, of course, here. Plaintiffs are alleging it's all drivers who use the Uber app. That in that case, it does not constitute public injunctive relief. And every court in California to have addressed this, state and federal courts, and they have all agreed that this is not public injunctive relief. What about giving the Massachusetts High Court the opportunity to pass on this question? Your Honor, I don't think that would be the right approach because, again, this is not public injunctive relief. This is a preliminary matter. Every court has agreed it's not public injunctive relief. And so even if Massachusetts were to recognize the Broughton rule from California, which has been on the books for 20 years and is a very specific creature of California law, and no court in Massachusetts or anywhere else in the country has ever hinted at adopting that. But here, it just wouldn't matter because this is fundamentally private relief. And plaintiffs brought a putative class action. And they're attempting to seek class-wide injunctive relief before a class is certified. And this is really private relief. The California Court of Appeal in Clifford also went through the analysis, and it explained that reclassification or misclassification claims, wage and hour claims, these sorts of individual claims, the relief would have to go to the individuals. No general member of the public. I think this is the key point, Your Honor. No general member of the public could bring this suit for an injunction. I could not, unless I'm a driver, I couldn't bring this suit. So it's not that I'm a member of the public that's indistinguishable from anyone else, as it is the case in a false advertising case, as the California Supreme Court explained. Those are unique situations. So I don't think that certification would be appropriate here. And again, this is just not a public injunction. So Judge Chen was correct to deny the request for a preliminary injunction and to first rule on the motion to compel arbitration. And he was correct to do that because that injunction sought is really the ultimate relief in this case. It's the ultimate relief that drivers can bring in arbitration. So I just want to be very clear, and Ms. Lis Reardon said that they cannot bring this claim. They could on an individual basis. This court upheld the class waiver in Uber's arbitration agreement in the O'Connor case. But an individual driver can seek this relief in arbitration. Also under the JAMS rules, the driver could file a motion for preliminary injunctive relief, and if they need to make a showing, but they could go through that on an individual basis. But here, what they're attempting to do is represent tens of thousands of absent persons. This is absolutely unprecedented, and it would raise all sorts of due process concerns for this court to grant that sort of relief at the outset of a case. And in particular, it would violate the party's arbitration agreement here. So that was the right approach. And here, I would just like to go back to the section one question. I think we are not writing on a blank slate here. This is now a question that has been addressed by so many courts, and they have found every district court in the circuit and this court in Bryce. And I think Bryce is very important here. It addressed this very question, and it distinguished the drivers in Rittman, and it very clearly distinguished them because in that case, Amazon was coordinating. It was alleged to be coordinating an interstate trip that the AmFlex workers were simply plugging in to perform pieces of. That is not what's alleged here. There's no evidence in the record to suggest that. And so the court in Bryce addressed this exact question. There's absolutely no basis for this court to depart from that analysis, and there's no evidence that would suggest anything to the contrary. And it's also consistent with the Seventh Circuit's decision in Wallace. And in Wallace, the court said it didn't matter where the goods came from. It just mattered whether the central enterprise, whether the central job function of the workers in question was to move those goods across the state line. And here, there is no suggestion that a driver who uses the Uber app is engaged in that broader enterprise to move people across state lines. It's coordinated by Uber. Even putting aside if there were those advertisements that plaintiff referenced that, again, are not record evidence. So for all of those reasons, the court should affirm the district court's decision, and I'm happy to answer any additional questions that the court might have because I see that my time is running low. Does anyone have any questions? No. Okay. Thank you. Thank you. Ms. Liswerden? Yes, thank you. A few points that I'm hoping to get to really quickly. First of all, the Bryce decision, as we know in our brief, that was decided on a mandamus standard. So the question was just whether another binding court decision already decided otherwise to what the lower court did. And in Whitman, this court held that the drivers don't have to themselves cross the state lines. In the Yeddo case, it's very important that the California Court of Appeal recognized that the defendant company didn't itself have to be involved in the interstate movement either. Of course, Amazon is involved in both the interstate and the intrastate, but the question is whether the movement of goods or passengers is itself interstate. It doesn't matter whether that company was involved in all of that. So like the Yeddo, it doesn't matter here that Uber wasn't involved in that. But on the issue about partnering with the airlines, I don't think there's really going to be any dispute that Uber has been doing that. If the court finds that significant, that could be remanded for factual discovery. The defense counsel just noted that 10% of the cars go to the airport. But actually what Uber has said in its briefs is that 10% of the rides by Uber drivers in Massachusetts go to an airport. So I would submit almost all Uber drivers in Massachusetts have probably taken passengers to the airport at some time or another. And then finally, on the issue of the public injunctive relief, I had noted that in the Clifford case, the court of appeals didn't see seeking overtime as being a matter of a public good. But here, sick pay, which affects the public if Uber drivers are spreading the coronavirus, is a public matter, but certainly more public than simply an overtime case. The other cases that rejected that misclassification claims affected a public interest were simply cited Clifford as simply doing their own analysis. And if you think about it, an Uber driver who is a member of the public who is concerned about being exposed or having the pandemic exacerbated or the virus transmitted by other Uber drivers who are out on the roads rather than staying home when they're sick and getting paid so that they can stay home, that would protect those Uber drivers as members of the public as well as themselves so that they can get the benefit of staying home more so with the protections of Massachusetts state sick pay law than if Uber is allowed to hide behind its arbitration agreement to prevent that from being enforced on any widespread basis that would actually protect the public. Of course, a driver being able to individually obtain injunctive relief does not address the public issue here. One person can get sick pay and stay home. The public interest, as the Attorney General has chimed in in this case, is that all Uber drivers should have the benefit of the state law and that will protect the public as a whole. And it's important that this be addressed somewhere. If it can't be addressed in arbitration, it has to be addressed in court. All right. Thank you very much, counsel. Thank you. Capriol versus Uber is submitted in this session. The card is adjourned for today. Thank you, Your Honor. This court for this session stands adjourned.
judges: Wardlaw, Nguyen, Eaton